## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

ALICIA BENNETT,

                    Plaintiff,

v.                                      CIVIL  ACTION  NO.  3:04-1322

DARRELL BOOTH, individually and
in his official capacity as a police officer
THE CITY OF HUNTINGTON,

                    Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Darrell Booth's motion to dismiss.  For the reasons stated herein, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.
### Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defending party may move to dismiss if the pleading party has failed to state a claim for which relief may be granted.  A Rule 12(b)(6) motion tests the sufficiency of the pleading.  It does not resolve factual disputes, "the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  In considering the motion, the claims must be viewed in the light most favorable to the non-moving party and all allegations accepted as true. *Id*. Dismissal is appropriate only when it appears beyond a doubt that no set of facts would entitle the

pleader to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The motion to dismiss for failure to state a claim is viewed with disfavor and rarely granted. *See Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989) (reaffirmed in *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 n.4 (4th Cir. 1993). *See generally* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* §§ 1356 and 1357 (1990 and 1998 Supplement).

## II.
## Factual Allegations and Procedural Background

Plaintiff, Alicia Bennett, has worked as a volunteer staff clerk for the City of Huntington Police Department for several years.[1] Ms. Bennett states that Cpl. Kendra Beckett, a member of the City of Huntington Police Department, borrowed her vehicle on or about February 28, 2004. Cpl. Beckett placed her FOP emblem on the license plate while she borrowed the vehicle and forgot to remove it upon returning the vehicle to Ms. Bennett. Contemporaneously, an inter-office cartoon circulated that depicted Defendant Sergeant Darrell Booth, an officer of the City of Huntington Police Department, in a less than favorable light. Plaintiff maintains that Sgt. Booth believed that Ms. Bennett was the source of the cartoon.

On or about March 1, 2004, Sgt. Booth noticed that Ms. Bennett's vehicle had the FOP emblem on the license plate. Sgt. Booth then contacted the Office of the Prosecuting Attorney and inquired as to whether the misplaced emblem constituted sufficient basis for arrest. Subsequently on March 2, 2004, Ms. Bennett was pulled over by Sgt. Booth after she pulled out of her parking spot at the City of Huntington Police Department. Sgt. Booth issued Plaintiff two traffic violations

---

[1]For the purposes of this motion, Plaintiff's allegations are taken as true.

of the West Virginia Motor Vehicle Code and arrested Ms. Bennett for a violation of West Virginia

Code § 35A-1-6.  Ms. Bennett alleges that Sgt. Booth requested that she exit the vehicle and when

Ms. Bennett complied, "he pulled her hands behind her back so hard that her shoulder cracked and

became strained."  Complaint at ¶ 14.  Sgt. Booth then placed her in handcuffs.  Ms. Bennett alleges

that the handcuffs were so tight that she "suffered red marks and bruises on her wrists for several

days afterwards."  *Id.*

The charges against were dismissed with prejudice by Cabell County Magistrate Patty V.

Spence on June 29, 2004.  Plaintiff subsequently filed this action against Sgt. Booth, individually

and in his official capacity as a police officer with the City of Huntington, and the City of

Huntington, alleging federal and state constitutional violations as well as violations of state common

law.  Defendant Booth has filed the instant motion to dismiss arguing that he is protected by

qualified immunity as to the federal claims and statutory immunity as to Plaintiff's state law claims.


### III.
### Analysis

**A.    Official Capacity**

Plaintiff has brought claims against Defendant Booth individually and in his official capacity

as an officer with the City of Huntington Police Department.  Because the City of Huntington can

be held liable for the acts of its officers while acting in their official capacity, the §1983 claim

against Sgt. Booth in his official capacity "should be dismissed as duplicative."  *Kentucky v.*

*Graham*, 473 U.S. 159, 165-66 (1985); *Hicks v. Halifax County Bd. of Educ.*, 93 F.Supp.2d 649, 667

(E.D.N.C.1999); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004).

3

**B.      42 U.S.C. § 1983 and Qualified Immunity**

Sgt. Booth in his motion to dismiss contends that he is protected from Plaintiff's federal constitutional claims by the doctrine of qualified immunity.   Under the doctrine of qualified immunity, government officials who are performing discretionary functions are "generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The court must conduct a two-step inquiry in order to determine if the officer should be afforded the protection of such immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court must determine "if the officer's conduct violated a constitutional right."  *Id.*  If the court finds that no constitutional right has been violated, there is no need for further inquiry.  *Id.* However, if it is determined that the plaintiff has alleged sufficient facts to show a constitutional violation, the court must next "consider whether, at the time of the violation, the constitutional right was clearly established, that is, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Gomez v. W.J. Adkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Saucier*, 533 U.S. at 201-02).

Plaintiff brings claims under 42 U.S.C. § 1983 for federal constitutional violations. Specifically, Plaintiff in Count I of her complaint makes allegations of false arrest and excessive force.  As the Supreme Court has noted many times, "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)).  Noting that the Fourth Amendment was drafted to address "the matter of pretrial deprivations of liberty," the Supreme Court has recognized that §1983 actions alleging false arrest

4

are properly analyzed under the Fourth Amendment.  *Id.* at 272.  Similarly, the Supreme Court has

held that §1983 claims alleging excessive force arising out of an arrest or investigatory stop are also

analyzed under the Fourth Amendment "objective reasonableness" standard.  *Graham v. Connor*,

490 U.S. 386, 394-95 (1989).

### 1.      False Arrest

Turning to Plaintiff's false arrest claim, the Court must first determine if Sgt. Booth violated

her Fourth Amendment right to be free from arrest without probable cause.  To succeed on her

claim, Plaintiff must be able to show that "no reasonable officer could believe, in light of the

contours of the offense at issue, that probable cause exists to arrest [her]."  *Tincher v. Fink*, No. Civ.

A. 2:03-0030, 2005 WL1845319 at *5 (S.D.W.Va. Aug 2, 2005) (slip opinion) (internal citations

omitted).  Probable cause in the context of an arrest is defined as "facts and circumstances within

the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution,

in believing...that the suspect has committed, is committing, or is about to commit an offense."  *Id.*

(quoting *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)).

Plaintiff was stopped for a routine traffic stop after Sgt. Booth contends he noticed she had

an expired motor vehicle inspection and a defective brake light in violation of the West Virginia

Motor Vehicle Code.  Ms. Bennett does not deny these charges.     Sgt. Booth also noticed that

Plaintiff had an FOP emblem partially obscuring her license plate in violation of West Virginia Code

§17A-3-15(b)[2] that requires the license plate to be "clearly visible."  Additionally, the existence of

_____

[2]West Virginia Code § 17A-3-15(b) specifically provides: "Every registration plate shall at
all times be securely fastened in a horizontal position to the vehicle for which it is issued so as to
prevent the plate from swinging and at a height of not less than twelve inches from the ground,

the FOP emblem on Plaintiff's vehicle was in violation of West Virginia Code §35A-1-6[3] which prohibits a person from exhibiting the emblem of an organization of which they are not a member. A violation of West Virginia Code §35A-1-6 is consider a misdemeanor.  Ms. Bennett does not dispute the fact that the FOP emblem was on her vehicle at the time she was stopped by Sgt. Booth. She instead argues that Defendant's motive for her arrest was improper.  However, Defendant's subjective intent is not at issue.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982) (Court focused the test for qualified immunity on the objective reasonableness of an official's acts, rejecting a subjective intent component).  To determine whether Plaintiff's Fourth Amendment rights were violated, one must determine whether an objectively reasonable officer in the position of Defendant would believe that an offense was being committed.  The facts, viewed in a light most favorable to Plaintiff, show that a violation of West Virginia law was in fact being committed.  Plaintiff does not deny that there was a FOP emblem on her license plate; nor does she contend that she was authorized to display such an emblem.  While an officer would not usually arrest a suspect for such a violation, Sgt. Booth was acting within his authority to do so.  The Supreme Court has held, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal

---

measuring from the bottom of the plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible."

[3]West Virginia Code § 35A-1-6 specifically provides: "Any person who shall wilfully wear, exhibit, display, print, or use, for any purpose, the badge, motto, button, decoration, charm, emblem, rosette or other insignia, of any such association or organization, herein mentioned, duly registered hereunder, unless he or she shall be entitled to use and wear the same under the constitution and by-laws, rules and regulations of such association and organization, shall be guilty of a misdemeanor, and upon conviction, shall be punished by a fine not exceeding twenty dollars, and, in default of payment, committed to jail for a period of not to exceed ten days."

offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."

*Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (Court held that officer's custodial arrest of mother for failing to wear a seatbelt did not violate the Fourth Amendment). The Court finds that an objectively reasonable officer in Defendant's position would have probable cause to arrest Plaintiff; therefore, Plaintiff has failed to show that there has been a constitutional violation. The Court need not conduct further inquiry to determine if Defendant is entitled to qualified immunity.

### 2.   Excessive Force

Plaintiff also alleges that Sgt. Booth exerted excessive force in violation of the Fourth Amendment when placing her under arrest. To determine whether the force used to effect the arrest is "reasonable," the Court must carefully balance the intrusion on the victim's Fourth Amendment right against the governmental interest involved. *Graham*, 490 U.S. at 396. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* In assessing whether the officer's use of force meets the objective reasonableness standard, the Court "must consider the facts and circumstances of the case from the perspective of a reasonable officer at the time of the incident, while keeping in mind that law enforcement officers often must make split second judgments under tense and uncertain circumstances." *Veney v. Ojeda*, 321 F.Supp.2d 733, 742 (E.D.Va. 2004). To help in that assessment, the Supreme Court in *Graham* set out three factors to consider: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. Additionally, the

Fourth Circuit has considered a fourth factor, the extent of the suspect's injury.  *Veney*, 321 F.Supp.2d at 742.

Considering the factors laid out above, the Court finds that Plaintiff has alleged sufficient facts that Sgt. Booth exerted excessive force, in violation of the Fourth Amendment, when placing her under arrest.  Plaintiff was arrested for improperly displaying a FOP emblem on her license plate.  It was not a crime of violence or one which would lead a reasonable officer to believe that Ms. Bennett posed any threat to the safety of Sgt. Booth or others.  This is evidenced by the fact that Sgt. Booth did not take action the moment he noticed the emblem on Ms. Bennett's vehicle but rather waited until after conferring with the prosecutor's office before detaining Plaintiff.  There are no allegations that Ms. Bennett resisted arrest or was at any point uncooperative with Sgt. Booth. In light of these facts, Sgt. Booth proceeded to "pull[] her hands behind her back so hard that her shoulder cracked and became strained.  He placed handcuffs on her wrists so tightly that Ms. Bennett suffered red marks and bruises on her wrists for several days afterwards.  Ms. Bennett asked that the cuffs be loosened at least three different times, but [Sgt. Booth] refused to do so." Complaint at ¶ 14.  Plaintiff also alleges that she suffered a shoulder sprain.  No reasonable officer, under the facts and circumstances known to Sgt. Booth at the time of the arrest, would have used such forceful means to detain Plaintiff.  Therefore, the Court, viewing the facts in a light most favorable to Plaintiff, finds that Plaintiff has sufficiently alleged facts to show that Sgt. Booth committed a constitutional violation.

The Court, in considering Sgt. Booth's qualified immunity defense, must now determine whether the constitutional violation was clearly established at the time of the incident.  "This step requires determining whether a reasonable officer in [Sgt. Booth's] shoes could have believed that

his use of force was lawful." *Veney*, 321 F.Supp.2d at 744.  Accepting Plaintiff's allegations as true, it appears to the Court that a reasonable officer in Sgt. Booth's shoes  could not have believed that forcefully placing Plaintiff in handcuffs, causing her to suffer the alleged injuries, is considered necessary or reasonable under the facts alleged.  Therefore, the Court finds that Defendant does not have the protection of a qualified immunity defense to Plaintiff's claims of excessive force.

**C.      State Law Claims and Statutory Immunity**

As with Defendant's claim of qualified immunity as to Plaintiff's 42 U.S.C. §1983 claims, in determining whether Defendant is entitled to statutory immunity from Plaintiff's state law claims, the Court must first determine whether Plaintiff has stated a viable claim before addressing whether statutory immunity applies.

**1.      False Arrest and Malicious Prosecution**

Plaintiff makes claims for false arrest and malicious prosecution under state law.  Turning first to Plaintiff's false arrest claim, the Court notes that under West Virginia law "a peace officer may legally arrest, without a warrant, for a misdemeanor committed in his presence." *City of McMechen v. Fidelity and Casualty Co. of New York*, 116 S.E.2d 388, 392 (W.Va. 1960).  Plaintiff has not denied that she had a FOP emblem obscuring her license plate when she was pulled over and subsequently arrested by Sgt. Booth.  Thus, Plaintiff was committing a misdemeanor at the time of the  traffic stop giving Sgt. Booth probable cause to arrest her.  As a result, Plaintiff cannot make out a claim under West Virginia state common law for false arrest.

Given that the Court has found that Sgt. Booth had probable cause to arrest Ms. Bennett, her

claim for malicious prosecution must also fail.  To state a viable claim for malicious prosecution Plaintiff must show: "(1) that the prosecution was set on foot and conducted to its termination, resulting in [P]laintiff's discharge; (2) that it was caused or procured by [D]efendant; (3) that it was without probable cause; and (4) that it was malicious.  If [P]laintiff fails to prove any of these, [s]he cannot recover." *Pote v. Jarrell*, 412 S.E.2d 770, 774 (W.Va. 1991).  Therefore, because the Court has already found that Sgt. Booth had probable cause for the arrest, Plaintiff's claim for malicious prosecution must be dismissed.

### 2.       Abuse of Process

Plaintiff, in Count IV, has also stated a claim for abuse of process under West Virginia law. "Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *Id*. (internal citations omitted).  Unlike a claim for malicious prosecution, a claim for abuse of process focuses on the purpose for which the action was initiated rather than whether the commencement of the action was justified. *Preiser v. MacQueen*, 352 S.E.2d 22, 28 n.8 (W.Va. 1985).  Plaintiff alleges that Sgt. Booth arrested her and filed a complaint with the Cabell County Magistrate because he believed that Plaintiff was the source of a cartoon depicting Defendant in a negative light.  The Court, taking her  allegations as true, finds that Plaintiff has alleged facts sufficient to place Defendant on "fair notice of what [her] claim is and the grounds upon which it rests;" therefore, Plaintiff's claim for abuse of process should not be dismissed. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

Since the Court has found that Plaintiff can continue with her claim for abuse of process, the

Court must now determine whether Sgt. Booth is entitled to statutory immunity from Plaintiff's claim.  West Virginia Code provides:

> An employee of a political subdivision is immune from liability unless one of the following applies:
> (1)    His or her acts or omissions were manifestly outside the scope of employment or official responsibilities.
> (2)    His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
> (3)    Liability is expressly imposed upon the employee by a provision of this code.

W.Va. Code § 29-12A-5(b)(1-3)[4].  Plaintiff has alleged that Defendant's purpose in initiating her arrest was retaliation for the derogatory cartoon he believed Plaintiff had produced. As such, Plaintiff has alleged that Defendant's actions were with malicious purpose and in bad faith; therefore, Defendant is not entitled to statutory immunity from Plaintiff's claim for abuse of process.

### 2.        Assault and Battery

In Count IV of her Complaint, Plaintiff also alleges that Sgt. Booth's actions constituted assault and battery.  Under West Virginia law, to ultimately maintain a claim for battery, Plaintiff would have to show (1) Sgt. Booth acted intending to cause harmful or offensive contact with Plaintiff or to place Plaintiff in imminent apprehension of such conduct and (2) Plaintiff must be put in such imminent apprehension.  *West Virginia Fire and Casualty Co. v. Stanley*, 602 S.E.2d 483, 495 (W.Va. 2004) (citing Restatement (Second) of Torts § 21 (1965)).  Similarly, to establish a claim for assault, Plaintiff would have to show that Sgt Booth (1) acted intending to cause a harmful

---

[4]Defendant also argues that he should be afforded statutory immunity under West Virginia Code §29-12A-13(b); however, that provision of West Virginia Code only prohibits suits against an employee acting within his scope of employment for the purpose of directly establishing the liability of the political subdivision.  *See Brooks v. Isinghood*, 584 S.E.2d 531 (W.Va. 2003).

or offensive contact with Plaintiff, or in imminent apprehension of such a contact, and (2) harmful contact with Plaintiff directly or indirectly resulted.  *Id.* at 494 (citing Restatement (Second) of Torts, § 13 (1965)).  Plaintiff alleges that Sgt. Booth forcefully placed her in handcuffs and caused injury as a result. The Court finds that at this stage in the proceeding, Plaintiff has disclosed sufficient information to put Defendant on notice as to the claim against him and the basis for it. *Id.* (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1202, at 94- 95 (3d ed.2004)).  Therefore, dismissal is not appropriate.

Defendant also claims he is entitled to statutory immunity under W.Va. Code 29-12A-5 from Plaintiff's claims of assault and battery.  As with abuse of process, Plaintiff has alleged that Defendant's motive in arresting her was that he believed she was the source of a cartoon depicting him in a less than favorable light.  Because Plaintiff has sufficiently alleged that Defendant's actions were with malicious purpose and in bad faith, Defendant is not afforded immunity from Plaintiff's assault and battery claims under West Virginia Code §29-12A-5(b).

### 3.      Intentional and Negligent Infliction of Emotional Distress

Finally, in Count IV, Plaintiff also brings claims of intentional infliction of emotional distress and negligent infliction of emotional distress against Sgt. Booth.  The West Virginia Supreme Court of Appeals in *Tolliver v. Kroger Co.* defines the tort of intentional infliction of emotional distress as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."   498 S.E.2d 702, 710 (W.Va. 1997).  Plaintiff claims that after knowing Defendant for years, he pulled her over and arrested her for a

misdemeanor violation, forcefully placed her in handcuffs causing injury to her shoulder, denied knowing her, and insisted on bringing charges against her.  She also claims that as a result she suffered great emotional distress and mental anguish.  As with her claims for abuse of process and assault and battery, the Court finds that Plaintiff's allegations are sufficient to place Defendant on notice as to the claims asserted against him and the basis for those claims.

Once again, in considering whether Defendant is entitled to statutory immunity, the Court looks at the purpose alleged by Plaintiff.  As stated, Plaintiff's allegations of purpose are sufficient to show that Defendant's actions were with malicious purpose and in bad faith in regards to her intentional infliction of emotional distress.  However, Defendant is protected by statutory immunity from Plaintiff's claims of negligent infliction of emotional distress.  Under West Virginia Code §29-12A-5(b) an employee can only be liable if his actions were "with malicious purpose, in bad faith, or in a wanton or reckless manner."  *Id.*  To maintain a claim for negligent infliction of emotional distress, Plaintiff would have to show that Sgt. Booth's action were in some manner negligent.  However, if his actions were negligent, they could not also be malicious, in bad faith, wanton or reckless as required to escape a claim of immunity.  Therefore, Plaintiff's claims of negligent infliction of emotional distress are dismissed.

## IV.
## Conclusion

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** as to Plaintiff's §1983 claims against Sgt. Booth in his official capacity and for false arrest and Plaintiff's state law claims for false arrest, malicious prosecution, and negligent infliction of emotional distress.  Additionally, Defendant's motion to dismiss is **DENIED** as to Plaintiff's §1983 claims for excessive

force and state law claims for abuse of process, assault and battery, and intentional infliction of emotional distress.  Furthermore, the Court **DENIES AS MOOT** Defendant's motion to stay discovery pending the Court's ruling on his motion to dismiss [Docket No. 35].

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.


ENTER:          September 9, 2005


ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE